## HOPKINS *v.* FARWELL & SCOTT.

A surety, who has paid a joint note of himself and his principal, cannot reïssue the same, so as to bind any person but himself, without the assent of the party to be bound.

In case of such reïssue, he cannot be charged upon the note as a joint note of himself and the principal, unless the assent of the principal to the reïssue is shown.

Proof of a note binding himself only does not support a declaration upon a joint note, in an action commenced against him and a co-signer.

Evidence of possession, by the plaintiff, of a note payable to bearer, or indorsed in blank, is not alone *prima facie* evidence of the reïssue of the note, after it has been once paid, against any party.

ASSUMPSIT against A. Farwell and H. Scott, on a joint and several promissory note, payable to H. Buffum, or bearer, on demand, and interest, dated April 6, 1854. There was a count for money had and received, and for money lent, &c.

Farwell was defaulted; Scott pleaded the general issue, and introduced the payee as a witness, who testified that the note was given for a debt of Farwell, and that Scott was a surety;

that soon after the note was given it was paid to him by Scott, and was given up to him.

The court ruled that Scott could reïssue the note, so as to make himself liable on it to the holder, and that the possession of the note by the plaintiff was *prima facie* evidence, as against Scott, that he had reïssued it.

To this ruling of the court Scott excepted ; and a verdict was taken for the plaintiff, which is to be set aside and a new trial granted, or judgment rendered thereon, as the Supreme Judicial Court may order.

*Cushing*, for Scott.

1. The question in this case is, whether the verdict finding a joint promise can be sustained.

2. The cases in which notes are held to be negotiable after payment by an indorser to an indorsee, are not applicable. *Davis* v. *Stevens*, 10 N. H. 186.

3. The note having been once paid could not again become the note of both parties without their joint assent. *Davis* v. *Stevens*, 10 N. H. 186 ; *Frost* v. *Martin*, 6 Foster 422 ; *Bryant* v. *Ritterbush*, 2 N. H. 214.

4. The plaintiff's possession is not, under the circumstances, even *prima facie* evidence against Scott.

*Wheeler & Faulkner*, for the plaintiff. Two questions are raised in this case :

1. Can a surety on a note, after payment to the principal, negotiate it so as to render himself liable to the purchaser ?

2. Is the possession of such a note by a stranger to the orginal contract *prima facie* evidence of such reïssue ?

In relation to the first point, the ancient doctrine undoubtedly was, that after a bill or note has once been paid, it cannot again be negotiated, so as to make any of the parties liable who otherwise would have been discharged. See *Beck* v. *Robley*, 1 H. Black. 89, n.

But in modern cases this doctrine has been somewhat modi-

fied, and is now restrained to cases where, by the transfer, some party to the bill or note might be prejudiced, who ought to be discharged. This is the well settled doctrine in England. Bayley on Bills 142; *Callow* v. *Lawrence*, 3 M. & S. 95; *Hubbard* v. *Jackson*, 4 Bing. 390; in Maine, *Mead* v. *Sewall*, 2 Greenl. 207; in Connecticut, *Bond* v. *Storrs*, 13 Conn. 412; in New-York, *Haven* v. *Huntington*, 1 Cowen 387; *Williams* v. *Mathews*, 3 Cowen 252; in Massachusetts, *Guild* v. *Eager*, 17 Mass. 615; *Eaton* v. *Carey*, 10 Pick. 211. Such, also, is the established principle in New-Hampshire. *Cochran* v. *Wheeler*, 7 N. H. 302; *Davis* v. *Stevens*, 10 N. H. 186. In the former of these cases the doctrine recognized is, that a note once paid ceases to be negotiable, except as against those by whom a new indorsement has been made, and such parties as are not prejudiced by the transfer; and in the latter case the court say, that an indorser of a note, or one collaterally liable, may take it up, and again put it in the market.

The above cited authorities are all cases of notes negotiated by the indorser after payment by him; but on principle the case of an indorser cannot be distinguished from that of a surety.

If the controversy in this case were between Farwell, the principal, and the holder of the note, inasmuch as the principal is not called upon to make a payment, which otherwise he would not be obliged to make, as he is not prejudiced by the transaction, and as the effect of the payment by the surety was not to discharge him, it would seem to follow, from the authorities above cited, that as against him this suit could be maintained.

But Farwell makes no defence, and the only controversy is between the surety, who reïssued the note, and the purchaser from him. The real question, then, would be, whether the maker of a note, after payment, may again give it currency; the answer to which is too well settled to require discussion or the citation of authorities.

2. The decision of the second point in this case depends upon that of the first.

If the surety could legally reïssue the note; if it could right-

fully come into the hands of the plaintiff in such a way as to entitle him to collect it of the surety, then the presumption of the law, always adverse to fraud, is that it did come to him rightfully. After payment, Farwell could not rightfully reïssue the note. Scott might. The last that was known of the note before it came into the plaintiff's possession, it was in the hands of Scott.

Under these circumstances the court was right in ruling that the possession of the note by the plaintiff was *prima facie* evidence, as against Scott, that he had reïssued it.

It is said there is no evidence of a joint promise. Our answer is, if the party had a right to negotiate the note as to himself, he binds himself, if the other party does not object. If Farwell by his default ratifies the act of Scott, Scott is in no position to say he did not make a joint promise. He might rightfully do that if the other party consented, then, or after. If negotiable paper is found in the hands of a party, it will be presumed rightfully there, if the signer had a right to place it there.

*Cushing,* in reply.

The doctrine of estoppel has no application to this case. A default is not evidence of a ratification. A party may fail to appear from various causes. That does not admit that he assents to the indorsement of this note. He is insolvent and worthless. Default is therefore no evidence of a joint promise. The question comes back to the point, whether there is proof that both parties jointly promised. No principle of justice requires that Scott should be estopped from taking advantage of the facts of the case.

There is here no occasion for any presumption. Is a material fact proved or not ? Is the party claiming to recover, bound to prove that the note was rightfully delivered to him ? If the note had not been paid, the fact of its being in plaintiff's possession would be *prima facie* evidence of a delivery. But here the payment appears, and the note could not be afterwards prop-

erly delivered. The simple question is here, on whom rests the burden of showing the facts ? There is no occasion to presume any wrong done. Scott, after payment, held this note as evidence of his claim against Farwell. He had a right to pledge it as evidence of a debt of Farwell to him. Will the court presume Scott put it in the hands of the plaintiff for a lawful or a wrongful purpose ? Scott is secure, if the plaintiff is held to show how he came by this note.

BELL, J. It is contended that a surety who has paid and taken up his note may again negotiate it, so as to render himself liable to the purchaser. Various authorities are cited to the point that an indorser of a note, who has paid it to a subsequent holder, may transfer it, and the purchaser may recover it against the indorser, and against any party who is liable over to him. They seem to us fully to sustain this position, and we do not understand it to be contested. This principle as to the right of an indorser is asserted to be true as to a surety upon a note, because it is said that on principle the case of an indorser cannot be distinguished from that of a surety. But we are unable to adopt this opinion. The case of the surety seems to us essentially different in this respect from that of the indorser, and the distinction is clearly recognized in *Davis* v. *Stevens*, 10 N. H. 186. It is there said by the learned judge who delivered the opinion of the court, " where a note is taken up by an indorser, who is not directly liable on the note, it may be again put in market. The promiser is not in such case prejudiced by such a transfer, and the note remains good against him. Where a note is taken up under such circumstances, it is not in fact paid. An individual discharges his liability as guarantee merely, but the general promise of the note remains unextinguished. But where one of two joint promisers, who is liable directly upon the note for its whole amount, pays such note, the note is necessarily extinguished. Whenever he discharges himself from the note by such payment, the payment goes to the whole promise of the note ; and when the whole promise of the note is met and

extinguished, it cannot afterwards be revived as a subsisting contract against a co-signer.    New rights and liabilities arise betwixt the co-signers, but the original contract is at an end."

That this is the true general rule as to the effect of payment by a surety, is conclusively shown by the cases which recognize an exception to it.    A surety who pays a debt is entitled to be subrogated to all the collateral securities for the debt which the creditor holds ; and the debt will be held a subsisting debt, for the purpose of upholding those securities, whether they have been assigned by a decree of a court of equity, or voluntarily, and in many cases where no assignment has been made.    *Low* v. *Blodgett,* 1 Foster 121 ; *Edgerly* v. *Emerson,* 3 Foster 555, and cases there cited.

There being in the present case no evidence of any concurrence or assent of Farwell to any reïssuing or negotiation of this note, the evidence only showing it paid by Scott alone, and last in his possession, it must follow that any transfer or negotiation of this note by Scott only, would operate to bind himself alone. To render the note, when reïssued, after payment by a surety, valid as a joint note, it must be proved that the note was reïssued by the assent of both.    But it is said that Farwell, the principal, makes no defence, and the only controversy is with the surety, who, as it is said, reïssued the note ; so that the real question in that case would be, whether the maker of a note, after payment, may again give it currency.

Admitting the right of a party thus to reïssue a note he has once paid, so as to bind himself, there are two answers to this view.    The action is founded upon an alleged joint and several note, and is brought against both the alleged signers as defendants.    Now it is clear that no recovery can be had against either on any several note.    The recovery must be had against them, or either of them, upon a joint cause of action, or not at all.    A valid cause of action against either would not support the action, because of the variance.

The default of Farwell is evidence against himself that he is liable on this note, but it is not evidence of that fact against Scott.

This question is, however, of no importance, if the plaintiff's principal position, which was adopted by the court, was well founded. The court ruled that Scott could reïssue the note, so as to make himself liable on it to the holder, and that the possession of the note by the plaintiff was *prima facie* evidence, as against Scott, that he had reïssued it. The first of these positions we regard as correct in the manner it is stated. But it is merely immaterial in the case, unless it is understood as applying to the existing circumstances of the case, in effect that Scott could reïssue the note, so as to make himself liable to the holder in that action. If it is to be so understood, we think the statement entirely incorrect, and that the authorities cited show that the action could not be maintained against both or either of the signers, as upon a joint contract, unless the note was reïssued by both, or by the assent of both.

The second position is equally immaterial, unless a similar rule of interpretation is applied to it, so that it may be understood that possession of the note by the plaintiff was *prima facie* evidence, as against Scott, that he had rightfully reïssued it as a valid note against both the signers ; and we see no reason why this extension should not be given to the rule, if true at all. If possession of the note alone is evidence of any thing against Scott, we see no reason why it is not equally evidence against Farwell.

There is no doubt of the general rule, that the possession of negotiable paper, either payable to bearer, or indorsed in blank if payable to order is *prima facie* evidence of title to the note. When the plaintiff produces the note and proves its execution, he has the benefit of the presumption that the title to it has been duly and regularly assigned to him. But the presumption resulting from possession, as well as from the proof of the defendant, is completely met and answered by proof that the note has been once paid and discharged by a party liable to its payment. If, then, the holder asserts that, notwithstanding it has been once paid, it has been again reïssued and put in circulation, it is incumbent on him to produce evidence of that fact. He has already had the benefit of the presumption of title resulting

from possession. He cannot have it a second time. The position of the security is essentially changed. Before payment, every presumption is in favor of the holder. After payment, the natural presumption is otherwise. Presumptions in cases of this kind rest on the customs and usages of business. It is not in the ordinary course of business that a note which has been once paid is again put in circulation. It is not ordinarily to be supposed that a party will accept, as a valid security, a note which has been paid. The natural presumption, if any were allowed, is that a note once paid has been delivered to a third person for some other purpose than as a valid security. The burden of proof must consequently be on the party who asserts an unusual transaction, to introduce evidence sufficient to prove it. It is not necessary to assume that the holder has come to the possession of the note wrongfully, since it may have properly come to his hands for a variety of other entirely lawful purposes. To hold that possession alone was *prima facie* evidence of a rightful reïssuing and negotiation of a note once paid to the holder, would render the proof of payment entirely immaterial, since the same proof which was sufficient to establish the title of the plaintiff at first, would be sufficient to meet the defence of payment. Had this ever been held or supposed to be the law, it could hardly have failed to have a place in some case or book to which we could have been referred, but we are aware of no such dictum. Upon these views of the law there must be

*A new trial.*